[Civ. No. 16084. First Dist., Div. One. Oct. 21, 1954.]

D. PIERI, Plaintiff and Appellant, v. GUY L. ROSEBROOK, Defendant and Appellant.

W. Gordon Eustice for Plaintiff and Appellant.

Anderson & Peck and Edward F. Peck for Defendant and Appellant.

PETERS, P. J.—Plaintiff, D. Pieri, hired the defendant, Guy L. Rosebrook, a licensed architect, to design a home, to supervise its construction, and to segregate the subcontracts of

the subcontractors. Plaintiff was dissatisfied with the cost of the completed house, and dissatisfied with the supervision of its construction by defendant. He brought this action against defendant for negligence in building a house that cost over $60,000, claiming that the architect had agreed to design a house not to cost over $30,000, and also charging negligent supervision and construction of a sun deck, charging defendant with taking a power saw belonging to plaintiff, and averring that defendant has charged for certain fire screens that never were delivered. Total damages of over $50,000 were alleged. Defendant answered, and cross-complained for the balance of his unpaid fees, alleged to be about $6,000. A nonsuit was granted as to the cause of action based on the fire screens, and no objection to this ruling is now made. At the trial defendant admitted he had received the power saw and owed plaintiff $311.90 for it. The trial court found that plaintiff had orally agreed to pay defendant a fee of 6 per cent of the total construction cost for supervision of construction, and an additional fee of 4 per cent of the total construction cost for the segregation of the subcontracts. Total construction cost was found to be $62,192, making defendant's total fee $6,219.20, of which $2,800 was found to have been paid, leaving $3,419.20 unpaid. The trial court also found that defendant had been negligent in the supervision of the sun deck, and awarded plaintiff a $2,500 setoff as the reasonable cost of repairing the defects, and also awarded plaintiff $311.90 for the power saw. Thus, a balance of $607.30 was found owing to defendant and he was awarded this sum by the judgment. Both plaintiff and defendant appeal.

The evidence is highly conflicting in many respects. There can be little doubt but that plaintiff originally retained defendant to design a house that was not to cost over $30,000, and that defendant represented that the type of house then desired could be built for that sum. The evidence shows that the plaintiff originally ordered a house substantially similar to one constructed by a neighbor, and which had been designed by defendant, and that defendant started to design such a house. The agreed fee for the plans was $800. The evidence also shows that while defendant was working on the preliminary sketches, the plaintiff and his wife ordered various changes. These involved substantial changes in design, larger and additional rooms, and more garage space. Defendant testified that he warned plaintiff on numerous occasions that, if the house were made bigger than originally intended, it would cost more money. The plans were drawn and the $800 fee

paid. Before such payment the plaintiff had orally agreed to hire defendant to supervise construction of the house for a 6 per cent fee. Plaintiff testified that this was to be 6 per cent of $30,000, but defendant testified, and the trial court found, that it was to be 6 per cent of the total construction cost. The finding is supported. When this agreement was entered into it was contemplated that the house was to be built by a general contractor under the supervision of defendant as architect. When the plans were submitted to general contractors for bids the lowest bid was $56,750. This was more money than plaintiff wanted to spend. It was then orally agreed between the parties that no general contractor would be hired and that defendant would be paid an extra fee for segregating the subcontractor's contracts. Defendant testified that it was agreed that his compensation for these services was to be 5 per cent of the total amount of the segregated contracts. After work on the house had started defendant brought over to plaintiff a standard form used in such circumstances, read to plaintiff the pertinent provisions of this contract, and explained the provisions to him in order to inform him of the nature of the services to be rendered for this additional fee for segregation. It is an added fee allowed for the additional work involved in getting subcontracts, segregating the subcontracts, and in writing them, duties normally performed by the general contractor. This form contract was not signed by the parties. It contained a provision for a 4 per cent fee for such services. In addition, plaintiff testified that it had been agreed that the fee was to be 4 per cent for these services. The trial court fixed this fee at 4 per cent of the total cost of construction. It was also agreed between plaintiff and defendant that defendant was not to keep the books on the transaction, but that such duty would be performed by plaintiff's daughter, a college student, without pay. Construction proceeded on a cash basis. As work progressed bills for labor and materials were submitted to defendant, and, upon his approval, he gave them to plaintiff, who paid them.

It is plaintiff's contention, and he so testified, that construction started before complete plans had been prepared, that defendant awarded many subcontracts before such plans had been completed, and, as a result, made many changes in construction without informing plaintiff that they would substantially increase the cost of construction. Plaintiff testified that the house was half constructed before he discovered the cost was going to exceed $30,000. Defendant testified that

plaintiff paid bills exceeding $50,000 before plaintiff asked him about the costs, or made any objection thereto.

There were undoubtedly many major changes made in the house during the course of construction. An additional bedroom and an additional bathroom were added, as was a tile roof. A change in the floor level of the house made after construction had started added an additional $15,000. Defendant testified that these changes and many others were all made at plaintiff's request, and the trial court so found.

When the house was completed it had cost $62,192. In addition to being very unhappy about this cost, plaintiff charged in his complaint that there were defects in the construction caused by negligent supervision of the work. The principal defect was rain leakage caused by an overload of concrete on a sun deck. This overload caused the deck to sag and caused the sliding door frames to bind, and also resulted in the flashings between the wall and the deck becoming ineffective in stopping leakage. It was because of these defects that the trial court allowed plaintiff a $2,500 setoff.

### Appeal of Plaintiff

One of plaintiff's major contentions is that the trial court committed prejudicial error in allowing defendant 4 per cent of the total construction cost for segregation of the contracts. Plaintiff points out that defendant at one time pleaded,* and certainly testified, that he had an express oral agreement for 5 per cent, but the trial court fixed the percentage at 4 per cent, which, he contends, must have been based on the reasonable value of such services. Plaintiff then points out that he was precluded from proving generally the reasonable value of such services, and contends that under such circumstances defendant had to recover 5 per cent or nothing at all.

. If it were true that the 4 per cent finding were predicated on the theory that such was the reasonable value of the services involved, then it would have been error to have prevented plaintiff from proving such reasonable value, but the court did not so base its finding. It found an express oral agreement to pay 4 per cent. If there was an express oral agreement fixing the percentage then, of course, the question of the reasonable value of such services was not in issue.

The finding that there was an express oral agreement fixing

---

*In his original answer and cross-complaint the defendant did plead an express oral contract of 5 per cent for these services. But a demurrer was sustained to the pleading, and the amended answer and cross-complaint omitted any reference to this percentage.

such fees at 4 per cent is supported. Although defendant testified that the agreement was 5 per cent, he introduced into evidence the unsigned form agreement he had submitted and explained to plaintiff, which agreement contained a provision for 4 per cent for such services. Moreover, plaintiff expressly testified that he agreed with defendant to pay him percentages of 4 per cent and 6 per cent. The trial court was justified in disbelieving defendant's testimony that it had been agreed that the segregation fee was to be 5 per cent and in believing plaintiff that it had been agreed that it should be 4 per cent. How plaintiff was prejudiced under these circumstances does not appear.

■ Plaintiff also contends that defendant testified that he was to receive 5 per cent (fixed by the court at 4 per cent) of the total of the segregated contracts, and contends that no evidence was introduced as to the total of such contracts. The trial court based the fee for these services on 4 per cent of the total cost of $62,192. The evidence shows that prior to trial defendant had submitted a bill for these services for $2,800, which is obviously somewhat less than 5 per cent but more than 4 per cent of the total cost of $62,192. This indicates to plaintiff that defendant calculated the segregated contracts on something less than the total construction cost. But the fallacy in this reasoning is that the only evidence in the record is that the entire job was done by segregated contracts. The records showed this was $62,192. Thus, the trial court properly relied on the total construction price as being the equivalent of the total of the segregated subcontracts.

■ The next major contention of plaintiff is that the 6 per cent figure should have been computed on $30,000 and not on $62,192. It is argued that the evidence shows that defendant was hired to draw plans and supervise the construction of a $30,000 house, and that the additional costs were incurred because of defendant's claimed negligent failure to have complete and detailed plans at the time construction started. There is no merit to these contentions.

Defendant testified, and the trial court found, that the agreement was to pay 6 per cent of the total construction price. That finding is supported. The real question is, what caused the added costs? Plaintiff testified that it was because detailed plans were not available. The trial court found that plaintiff ''authorized and made substantial changes in the design of the premises and in the construction of the home

during the progress of the work which substantially increased the cost thereof; that said increased costs were incurred with plaintiff and cross-defendant's knowledge and consent and, from time to time, paid for by him.'' In a memorandum opinion filed by the trial judge at the time he directed findings to be prepared it is stated: ''Plaintiff owner's contention that the construction was to cost not more than $30,000 is not borne out by the evidence. Among the factors in evidence which negative plaintiff's claim are the following: that plaintiff owner's family kept the books, records and accounts of the project and that the bills were submitted to him as the job progressed and he paid them; that many substantial changes in the plans and construction were made from time to time with plaintiff's knowledge, consent, and by his order, and the increased costs thereof were paid by him. It is clear that plaintiff knew before the construction was half completed that the project had progressed far beyond the original plans and specifications, and he must be held to have authorized the increased costs.'' These statements are amply supported by the record, and that evidence supports the challenged finding. Whether the increased costs were incurred because of failure to have completed plans when contracts were awarded and because of negligent supervision, or were caused by plaintiff's authorized changes in construction, was a fact question. On conflicting evidence the trial court has found adversely to plaintiff. This court cannot interfere with that supported finding.

Plaintiff next objects to the claimed failure of the trial court to give plaintiff a $416.98 credit for having paid that sum to defendant for miscellaneous travel expenses. Defendant admits that he was paid this sum, but claims that this sum was included in the $2,800 found to have been paid by plaintiff and allowed as a setoff. That lump sum was not itemized in the findings, the court merely finding that $2,800 had been paid to defendant by plaintiff, and that such sum should be deducted from the total sum due defendant. Defendant had claimed $648.70 for expenses for his automobile, telephone, etc., and the court refused to allow these to him. Thus, so far as the findings are concerned, no error appears. (See, generally, *Swafford* v. *Goodman*, 115 Cal.App.2d 105 [251 P.2d 680].) The record does not show that plaintiff objected to this finding or sought clarification. It is his duty to show error on the face of the record. This he has not done.

Plaintiff next points out that the fees totaling 10 per cent

were computed on the basis of a total cost price of $62,192, and that the court awarded him a $2,500 offset because of found negligence on the part of defendant in supervising the construction of the sun deck. Plaintiff contends that he should not be charged 10 per cent of that portion of the work that will have to be done over, that is, on the $2,500, and that he is therefore entitled to a further deduction of $250. This reasoning will not stand analysis. One of the main reasons the sun deck was defective was that after the cement floor was installed defendant, as architect, ordered the cement contractor to put on a cover coat of cement. In doing so this contractor put on so much cement that, among other things, it caused an overload on the supports of the sun deck. The defendant testified that he had told plaintiff not to pay the subcontractor for putting on the second covering of cement, and the subcontractor testified that he had not been paid for this service. Thus, there is not included within the total cost of $62,192 any amount at all for this coating which resulted in the overload.

Moreover, the trial court found it would cost plaintiff $2,500 to repair the defects in the sun deck. Presumably, that sum included some sum to pay for the proper supervision of the work. Therefore, plaintiff is not entitled to a further deduction of $250, because that would result in reimbursing him twice. There is no merit to this point.

### Appeal of Defendant

The defendant attacks that portion of the judgment allowing the plaintiff a $2,500 setoff, that being the amount that the court found would have to be expended by plaintiff because of defendant's faulty and negligent supervision of the construction of the sun deck. The precise finding is: "That it is true that defendant and cross-complainant failed to exercise the standard of care of other architects in the community in the supervision of the construction of the sun deck and supports therefor resulting in certain defects in the construction thereof"; and that the reasonable cost of repairing such defects is $2,500. This sum was deducted from defendant's fees. Defendant contends that no architect testified that, measured by the general standard of the care of architects, he was negligent. Without such evidence, so he claims, the award cannot stand. It is also claimed that the defects were caused by negligent performance by the

subcontractor, and that the architect does not guarantee the work of subcontractors.

There is much evidence in the record in reference to the sun deck. An architect, an engineer, and various subcontractors testified that the sun deck had been constructed in a faulty manner. As a result it placed too much weight on the underpinnings, it sagged, the window and door frames were bent, and this caused a condition making the flashings ineffective to prevent leaks. The architect called by plaintiff as a witness testified that he had examined the sun deck and its supports; that there was an overload; that the deck was supported by a laminated beam held together with 16-penny nails; that ''I don't believe that nails are the proper connections for laminated beams. Therefore, I haven't ever specified [them]''; that ''I believe the laminated beam should be held together, the lamination should be held together . . . with bolts.'' He recommended that the wood beam, which had sagged under the weight of the concrete floor, should be replaced with a steel beam, and that such was ''necessary.'' He also testified that, according to his computations and in his opinion, stronger supports than the 4″ x 4″ posts used should have been employed.

A licensed engineer experienced in construction was also called by plaintiff. He testified to water leakage caused by improper flashings between the deck and the house, and to the excessive weight of the slab.

The evidence need not be further explored. Certainly there was ample evidence to show faulty construction of the sun deck. Whether that was solely caused by the subcontractor's negligence or was also caused by faulty supervision of the architect were fact questions. While the standard of care of an architect was not spelled out in so many words, the evidence shows how the deck should have been constructed, and that defendant, as supervising architect, did not require it to be constructed in that fashion. The trial judge did not need an architect or other expert to tell him that proper architectural supervision and design had not been employed when the sun deck sagged and leaked. In such circumstances, at least a reasonable inference sufficient to support the finding arises that these results were attributable to the negligence of defendant. (See, generally, *Goldberg* v. *Underhill*, 95 Cal.App.2d 700 [213 P.2d 516].)

This case is primarily a fact case. Although the evidence was conflicting, the findings are supported by substantial

and reasonable evidence. That being so, the judgment must stand.

On both appeals the judgment is affirmed; each party to bear his own costs on these appeals, except that each party shall bear half of the costs of the transcripts on appeal.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied November 19, 1954.